DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| OAKLAND BENTA; JOHN TUTEIN, PETER WEISMAN; PETER WEISMAN & ASSOC.; JOHN P. RAYNOR; RAYNOR, RENSCH & PFEIFFER; JAMES J. HEYING; PROSSER & CAMPBELL P.C., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 2012-36 |
| STAN SPRINGEL, as CHAPTER 11 TRUSTEE OF THE ESTATE OF INNOVATIVE COMMUNICATION CORPORATION, | ) ) ) ) | |
| Defendant. | ) ) | |

APPEARANCES:

**Jeffrey B. C. Moorehead, Esq.**
**Jeffrey B. C. Moorehead, P.C.**
St. Croix, VI
> *For the plaintiffs Oakland Benta; John Tutein; Peter*
> *Weisman, Peter Weisman & Assoc.; James Heying; and Prosser*
> *& Campbell, P.C.,*

**John P. Raynor**
Omaha, NE
> *Pro se,*

**Raynor, Rensch & Pfeiffer**
> *Unrepresented entity,*

**Benjamin A. Currence, Esq.**
**Law Offices of Benjamin A. Currence**
St. Thomas, VI
> *For the defendant.*

## MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of the defendant to dismiss this matter for want jurisdiction.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the lengthy, ongoing bankruptcy of the Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company. Between July 17, 2009, and September 21, 2009, Stan Springel ("Springel"), acting as the Chapter 11 Trustee of the Estate of ICC, initiated adversary proceedings against the plaintiffs in this case: Oakland Benta; John Tutein; Peter Weisman; Peter Weisman and Associate; John P. Raynor; Raynor, Rensch and Pfeiffer[1]; James J. Heying; and Prosser and Campbell, P.C (collectively, the "Plaintiffs"). In each of the adversary proceedings, Springel seeks to undo transactions entered into between the Plaintiffs and ICC. Springel claims variously that these transactions were either fraudulent conveyances or preferential transfers, and thus

---

[1] Precisely how Raynor, Rensch and Pfeiffer purports to participate in this action is unclear. It appears to be a corporate entity. Yet it is not represented by any attorney of record. Absent some form of representation, Raynor, Rensch and Pfeiffer cannot appear before this court. *See Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3d Cir. 1966) (holding "that a corporation can do no act except through its agents and that such agents representing the corporation in Court must be attorneys at law who have been admitted to practice, are officers of the Court and subject to its control"); *see also* LRCi 83.1.

disallowed under the Bankruptcy Code. The adversary actions
remain pending before the Bankruptcy Division of this Court.

The Plaintiffs initiated this action on May 11, 2012. Their
Complaint seeks a declaratory judgment, pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2201, that this Court's
General Order referring matters involving bankruptcies to the
Bankruptcy Division is unconstitutional. Specifically, the
Plaintiffs assert that, in light of the Supreme Court's recent
decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the
Bankruptcy Division cannot constitutionally render final
judgments in actions to avoid transfers as fraudulent
conveyances.

Springel now moves to dismiss this action pursuant to
Federal Rule of Civil Procedure 12(b)(1).

## II.  DISCUSSION

### A.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)")
governs motions to dismiss for lack of subject-matter
jurisdiction. A Rule 12(b)(1) motion may be treated either as a
facial or a factual challenge to the court's subject-matter
jurisdiction. *Gould Elecs. v. United States*, 220 F.3d 169, 178
(3d Cir. 2000). In considering a facial challenge to subject-
matter jurisdiction under Rule 12(b)(1), all material
allegations in the complaint are taken as true. *Id.* at 891-92;

*see also Taliaferro v. Darby Township. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (summarizing the standard for facial attacks under Rule 12(b)(1) as "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). The matter must be dismissed if the allegations on the face of the complaint, taken as true, fail to "allege facts sufficient to invoke the jurisdiction of the district court." *Licata v. USPS*, 33 F.3d 259, 206 (3d Cir. 1994).

However, if the challenge arises after the allegations in the complaint have been controverted, "the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citing *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 62 (3d Cir. 1984)). The plaintiff may discharge this burden by producing "affidavits or other competent evidence that [show that] jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

B.    **The Declaratory Judgment Act**

The Declaratory Judgment Act provides, in pertinent part,

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

> seeking such declaration, whether or not
> further relief is or could be sought.

28 U.S.C. § 2201(a).

Although the Declaratory Judgment Act permits courts to entertain the actions described therein, it does not require them to do so. Instead, the Declaratory Judgment Act permits a court, in its discretion, to decline to assert jurisdiction over a claim even if there is a valid, underlying case or controversy. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995).

There is a general policy favoring dismissal or abstention where declaratory relief is sought while alternative remedies are available. *See, e.g., United States v. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) However, "the mere existence of a related . . . proceeding does not end the inquiry . . . ." *Id.* Instead, the court must first assess whether the remedies available in that proceeding are adequate, such that "the claims of all parties in interest can satisfactorily be adjudicated." *United States v. Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (citing *Brillhart v. Excess Ins.*, 316 U.S. 491 (1942)).

Additionally, at the motion-to-dismiss stage, the courts in this Circuit have identified at least five factors to be

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 6

considered in determining whether jurisdiction should be

exercised in any declaratory judgment action:

> (1)   the likelihood that a federal court
>       declaration will resolve the uncertainty
>       of obligation which gave rise to the
>       controversy;
>
> (2)   the convenience of the parties;
>
> (3)   the public interest in settlement of the
>       uncertainty of obligation; and
>
> (4)   the availability and relative convenience
>       of other remedies.

*Dep't of Envtl. Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (citing

*Terra Nova Ins. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir.

1989); *Bituminous Coal Operators' Assoc., Inc. v. Int'l Union,*

*United Mine Workers of Am.*, 585 F.2d 586 (3d Cir. 1978)). "In

conducting this inquiry, '[c]ourts look with disapproval on any

attempt to circumvent the laudable purposes of the Act, and seek

to prevent the use of the declaratory action as a method of

procedural fencing, or as a means to provide another forum in a

race for res judicata.' " *Terra Nova*, 887 F.2d at 1225 (quoting

6A J. MOORE, J. LUCAS & G. GIRTHEER, JR., MOORE'S FEDERAL PRACTICE

¶ 57.08[5], at 57-50 (2d ed. 1987)) (alteration original).

### III.  <u>ANALYSIS</u>

By his motion, Springel urges the Court to exercise its

discretion and decline to assert jurisdiction over this action.

Springel has not filed an answer or any other responsive

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 7

pleading that controverts the allegations in the Complaint.

Accordingly, the Court will treat his challenge as a facial one.

## A.   Adequacy of Proceedings in Bankruptcy Division

Springel argues that the issues raised by the Plaintiff's Complaint are presently before the bankruptcy division of this Court, and this action is therefore redundant.

It is well-established that a court may entertain a declaratory action even "where another adequate remedy exists." *Dep't of Envtl. Res.*, 923 F.3d at 1075. However, "[a] judge asked to enter a declaratory judgment that as a practical matter will dispose of some other case should consider whether a multi-track course of litigation is the best way to resolve the dispute." *Klene v. Napolitano*, 697 F.3d 666, 670 (7th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)). In making this determination, a court must evaluate "which [remedy] will most fully serve the needs and convenience of the parties and provide a comprehensive solution of the general conflict." *Id.* (quoting 10A Wright, Miller, & Kane, Federal Practice and Procedure § 2758 (West 1983)) (internal quotation marks omitted).

Where a parallel claim is also pending in a state court, courts have framed the analysis as an "inquiry into the scope of the pending state court proceeding and the nature of defenses open there." *Dep't of Envtl. Res.*, 923 F.3d at 1075 (quoting

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 8

*Brillhart*, 316 U.S. at 495.) (internal quotation marks omitted).

"[T]he mere existence of a related state court proceeding does not end the inquiry, rather the question of the adequacy of the state court proceeding remains." *Dep't of Envtl. Res.*, 923 F.3d at 1075. Thus, for example, in *United States v. Department of Environmental Resources,* 923 F.2d 1071, (3d Cir. 1991), the Court of Appeals for the Third Circuit found parallel state proceedings inadequate when the state court issued an injunction against the United States without first considering the United States' defense of sovereign immunity. *Id.* at 1076-77.

Where a parallel claim is pending before an administrative agency, courts have similarly held that "exhaustion of an administrative remedy is unnecessary if the administrative remedy would not resolve [the] claim commenced in federal court." *Thomas v. Vaughn*, 915 F. Supp. 1177, 1180 (M.D. Ala. 1995) (citing *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 468 (S.D. Fla. 1980)). Thus, for example, the Supreme Court has held that an individual challenging the Social Security Act's administrative procedures as violative of constitutional due process need not present his constitutional challenge to the administrative agency or exhaust his administrative appeals before proceeding in federal Court. *See Matthews v. Eldridge*, 424 U.S. 319, 328-30 (1976) ("It is unrealistic to expect that the Secretary would consider substantial changes in the current

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 9

administrative review system at the behest of a single aid
recipient raising a constitutional challenge in an adjudicatory
context. The Secretary would not be required to consider such a
challenge.")

It does not appear, however, that any court of record has
precisely addressed the issue presented by this case: where what
is sought is not just a determination on an issue relating to
the merits of an underlying claim or controversy, but rather a
jurisdictional determination at a threshold level, which can and
may be raised before an inferior tribunal.

It is well-established that a court may, in the first
instance, determine its own jurisdiction. *See, e.g.*, *Chicot
Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376
(1940) (holding that district court sitting in bankruptcy had
authority to determine whether bankruptcy statute conferred
jurisdiction over it); *LeBoon v. Lancaster Jewish Cmty. Ctr.
Ass'n*, 503 F.3d 217, 222 (3d Cir. 2007) ("We have jurisdiction
to review our own jurisdiction when it is in doubt . . . .");
*U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 166 F.3d 552,
555 (3d Cir. 1999) (noting that bankruptcy court first
determined whether it had jurisdiction).

It is also well-established that a district court may refer
certain matters to other divisions within that court, such as
magistrate judges or bankruptcy judges. *See* 28 U.S.C.

*Benta v. Springel*
Civil No. 2012–36
Memorandum Opinion
Page 10

§ 636(c)(1); 28 U.S.C. § 157(a). This Court is unaware of, and the Plaintiffs have not identified, any authority for the proposition that a bankruptcy judge is incapable of determining its own jurisdiction in the first instances. *See, e.g.*, *Stern v. Marshall*, 131 S. Ct. 2594, 2602 (2011) (noting that bankruptcy judge first determined whether or not it had jurisdiction before matter was appealed).

Moreover, should a litigant feel that a matter is not properly before a bankruptcy judge, it may move for withdrawal of the reference. *See* 28 U.S.C. § 157(d) (providing that "The district court may withdraw . . . any case or proceeding referred under this section, . . . on timely motion of any party, for cause shown"). Further, any adverse determination by the Bankruptcy Division could ultimately be appealed to this Court as a matter of right. *See* 28 U.S.C. § 158(a) (granting district courts jurisdiction over appeals of all "final judgments, orders, and decrees" of a bankruptcy judge). The Court exercises plenary review over a bankruptcy judge's findings of law. *See In re Barbel*, Civ. No. 01-221 (RLF) 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004), *aff'd* 183 Fed. App'x 227 (3d Cir. 2006). If the bankruptcy judge does assert jurisdiction over the various underlying adversary proceedings, there is no conceivable obstacle to the Plaintiffs' raising that issue before this Court on appeal.

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 11

These considerations give the court considerable pause. To begin, a declaration on a pure question of law, when that issue is also presently before the Bankruptcy Division, seems redundant. It would be akin to seeking an order from the district court on a matter referred to a magistrate judge. Yet, to do so would seem flatly contrary to the district court's limited review of magistrate's orders on nondispositive matters: "A district judge may only set aside an order of a magistrate concerning a nondispositive matter where the order has been shown to be clearly erroneous or contrary to law." *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 146 (3d Cir. 2009). Likewise, petitioning the Court for a declaratory judgment on a threshold matter squarely referred to the bankruptcy judge would seem to undermine the very purpose for such referral.

Moreover, the Plaintiffs have made no suggestion that the remedies available in the Bankruptcy Division are in any way inadequate. Parties appearing before bankruptcy judges are entitled to assert all defenses made available in federal district courts under Federal Rule of Civil Procedure 12(b). *See* Fed. R. Bankr. P. 8012(b). Indeed, the Plaintiffs in this case have done precisely that, by moving to dismiss in their respective adversary proceedings.

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 12

This is also not an instance where the bankruptcy judge is being asked to rule on a challenge to the entire Bankruptcy Code, or some similarly substantial claim. *See Matthews v. Eldridge*, 424 U.S. 319, 328-30 (1976) (holding that Social Security Administration could not be expected to rule on due process challenge to its statutorily mandated procedures). Instead, the Bankruptcy Judge is being asked to determine whether certain claims remain under its jurisdiction in light of the Supreme Court's decision in *Stern*. It is worth noting that, in that case, the first judge to address the issue of jurisdiction was in fact the bankruptcy judge. *See* 131 S. Ct. at 2602.

The Court thus finds that the proceedings in the Bankruptcy Division are adequate to address the issues raised in this action.

**B.    Appropriateness of Declaratory Relief**

Of course, as noted above, the mere fact that an adequate alternative remedy exists does not require this Court to refrain from exercising jurisdiction over this action. Accordingly, the Court will now consider the four factors enumerated above to determine if any counsel in favor of exercising jurisdiction.

**1.    Resolution of Legal Issues**

First, the Court is to consider whether "a federal court declaration will resolve the uncertainty of obligation which

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 13

gave rise to the controversy . . . ." *Dep't of Evntl. Res.*, 923
F.2d at 1075. In *Hurley v. Columbia Casualty Co.*, 976 F. Supp.
268 (D. Del. 1997), the district court considered whether an
action for declaratory relief should be dismissed given the high
degree of uncertainty surrounding the obligations of the
parties. In that case, the plaintiffs, former officers of a
corporation, sought a declaration that their insurance company
was obliged to defend them in an action threatened by
subsidiaries of the corporation. These subsidiaries were in turn
involved in ongoing bankruptcy proceedings.

    At the time the declaratory action was brought, the
subsidiaries had not yet filed any action or asserted any claim
against the officers. The district court thus held that it was
premature to exercise jurisdiction over the officers' claim for
declaratory relief. To begin, the district court noted that,
given the ongoing bankruptcy proceedings, "there is no way to
state with certainty what the status of the [subsidiaries] will
be at the time the suit is filed." *Id.* at 275. Specifically, the
court noted, should the bankruptcy be converted to a
liquidation, it would be impossible to predict who might
ultimately bring the action against the officers. The court
concluded that "[a] determination as to the parties rights under
the *present circumstances* could be rendered useless if the
underlying suit is subsequently filed in the name of a new and

different plaintiff than that currently proposed." *Id.* The Court

thus dismissed the action.

Here, the declaration sought would not "resolve the

uncertainty of obligation," *Dep't of Evntl. Res.*, 923 F.2d at

1075, "or clarify and settle the legal relations in issue,"

*Priority Healthcare*, 590 F. Supp. at 663, 667 (D. Del. 2008). At

best, a declaration that the Bankruptcy Division lacks

jurisdiction over fraudulent-conveyance actions would simply

result in these claims being litigated in another forum.

Of course, a general declaration that the Bankruptcy

Division lacks jurisdiction over fraudulent-conveyance actions

would certainly bring clarity to that legal issue. However, as

discussed above, there is no reason to believe that the

Bankruptcy Division is not equally capable of clarifying this

issue in the underlying adversary proceedings.

## 2.   Convenience of the Parties

Second, the Court must consider "the convenience of the

parties . . . ." *Dep't of Envtl. Res.*, 923 F.2d 1075. To make

this determination, courts have typically looked to the

"convenience factors" found in the analysis for transferring

venue under Title 28, Section 1404(a) of the United States Code.

Specifically, courts look to "(1) the convenience of the

parties; (2) the convenience of the witnesses; (3) the relative

means of the parties; (4) the locus of operative facts and

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 15

relative ease of access to sources of proof; (5) the
availability of process to compel the attendance of witnesses;
(6) the weight accorded the plaintiff's choice of forum; (7)
calendar congestion; (8) the desirability of having the case
tried by the forum familiar with the substantive law to be
applied; and (9) trial efficiency and how best to serve the
interests of justice . . . ." *Intema Ltd. v. NTD Labs., Inc.*,
654 F. Supp. 2d 133, 138 (E.D.N.Y. 2009) (citing *D.H. Blair &
Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006).

Here, as discussed above, the Plaintiffs have brought this
action in the same Court as the underlying adversary
proceedings. Thus, the first five factors of the venue-transfer
factors are inapposite. With respect to the sixth factor, courts
have held that in declaratory-judgment actions, a district court
"may give little *or no* weight" to a plaintiff's choice of forum
as "[a] plaintiff brings such an action because it has perceived
a threat of suit. Therefore, its posture before the court is
more akin to a defendant than an ordinary plaintiff seeking
relief." *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp.
2d 623, 632 (W.D. Mich. 2009) (citing *Hyatt Int'l Corp. v. Coco*,
302 F.3d 707, 718 (7th Cir. 2002) (emphasis original) (internal
citations and quotation marks omitted).

With respect to the seventh factor, the Plaintiffs have
raised no suggestion of calendar congestion or any other reason

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 16

to believe the litigation may proceed more slowly in the Bankruptcy Division.

With respect to the eight factor, both forums are equally capable of rendering a decision on the constitutional scope of the Bankruptcy Division's jurisdiction. Of course, the Bankruptcy Division is assuredly more familiar with bankruptcy law generally, and may be able to render a more expedient decision in this regard.

With respect to the ninth factor, as discussed at length above, there is no reason to believe that the Bankruptcy Division is in any way incapable of expediently and capably adjudicating all the issues between the parties. If anything, proceeding in this piecemeal fashion is more likely to cause delays and confusion. The Court thus finds that the convenience of the parties would best be served by allowing the litigation before the Bankruptcy Division to proceed through to its conclusion.

The convenience of the parties would also best be served by permitting them to litigate their claims in the underlying adversary proceedings. This may save some parties considerable expense by preventing them from relitigating the same issues before this Court. Moreover, the Bankruptcy Division is at this juncture more familiar with the particular facts of each

individual case and thus in a better position to render an
expedient decision.

### 3.   Public Interest

Third, the Court must consider "the public interest in a
settlement of the uncertainty of obligation . . . ." *Dep't of
Envtl. Res.*, 923 F.3d at 1075. In *Dish Network v. TiVo, Inc.*,
604 F. Supp. 2d 719 (D. Del. 2009), the plaintiff, after losing
a patent-infringement suit to the defendant, sought a
declaration that its new, redesigned digital video recorders
("DVRs") did not violate the same patent. The plaintiff
ostensibly initiated the action in response to remarks made by
the defendant's counsel to the effect that the redesigned DVRs
were not new or redesigned at all. The defendant thus sought
dismissal of the declaratory-judgment action in part on the
ground that it might "chill[] . . . vigorous advocacy . . . ."
*Id.* at 724 (internal quotation marks omitted). The Court
disagreed, noting that the "countervailing policy goals of
encouraging patent design-arounds, and hence innovation, are
just as compelling." *Id.*

There is, of course, always some public interest in
resolving unsettled questions of law, and this Court notes that
neither it nor the Third Circuit have yet to address the scope
of *Stern* and more specifically whether it has any effect on the
adjudication of fraudulent-conveyance actions. At the same time,

there are countervailing interests in avoiding piecemeal
litigation or the possibility of conflicting judgments. *See
Klene* 697 F.3d at 670 (7th Cir. 2012) (encouraging courts to
consider carefully whether entertaining a declaratory-judgment
action is warranted when it may lead to "a multi-track course of
litigation"). Moreover, there is no reason to think the public
interest will be less served by having the Bankruptcy Judge
decide this issue in the first instance and then, if necessary,
considered by this Court on appeal.

### 4.    Availability of Alternative Remedies

The fourth factor, which touches on the availability of
alternative remedies, is typically only considered when a remedy
exists that has not yet been pursued. *See, e.g.*, *Priority
Healthcare*, 590 F. Supp. at 668 (dismissing declaratory-judgment
action after determining parties had agreed to arbitrate all
their disputes). Where parties are simultaneously engaged in
another proceeding, courts instead first consider whether
abstention or dismissal is appropriate, as discussed at length
above. *See Dep't of Envtl. Res.*, 923 F.3d at 1075. As detailed
above, there are a readily available and convenient remedies for
the plaintiffs. They may seek withdrawal of the reference of
these matters to the Bankruptcy Division. They may also raise
the issue before the Bankruptcy Division and then, if necessary,
before this Court on appeal. The Court finds no reason to

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 19

believe the parties' claims would not "better be settled,"
*Brillhart*, 316 U.S. at 495, by allowing the adversary
proceedings to first adjudicate this issue.

As noted above, courts are to be especially skeptical where
the existence of alternative remedies suggests that the party
seeking declaratory relief may be engaged in "forum shopping" or
a "race for res judicata." *Terra Nova*, 887 F.2d at 1225. In
*United States v. Pennsylvania, Department of Environmental
Resources*, 923 F.3d 1071 (3d Cir. 1991), the Third Circuit
considered whether the United States engaged in forum shopping
by seeking declaratory relief in a federal court while a state-
court proceeding remained ongoing. In that case, a state agency
issued an administrative order requiring the United States to
clean up pollutants on a naval base. The administrative agency
then brought suit against the United States in state court,
seeking to enforce its order. The United States in turn brought
suit in federal district court, seeking a declaration that its
sovereign immunity barred any attempt by the state
administrative agency to enforce its order.

The Third Circuit held that the United States did not
engage in forum shopping by bringing the declaratory action in a
federal court. It opined that generally, the United States has a
"compelling interest" in a federal forum, more so than a private
litigant. *Id.* at 1078. This is particularly so where the United

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 20

States seeks "to assert federal interests against a state." *Id.*
at 1078-79. Accordingly, the court held that the United States'
choice of forum "should be granted no less weight than the
state's right to seek enforcement of its order based on state
law in a state court setting." *Id.*

Here, by contrast, this is not a case where the Plaintiffs
have a special interest in litigating before a separate and
distinct federal forum. Indeed, the Bankruptcy Division exists
by itself no more than does a magistrate judge of this Court. It
is a competent part of the same Court. The Plaintiffs thus seek
two determinations from two divisions of the same Court on the
same issue. As the Court has made clear throughout this opinion,
there is little to distinguish the two divisions at least with
respect to the litigation of this particular issue. The
Plaintiffs identify no reason why this forum might be better
suited to adjudicate this issue, why pursuing this litigation
before this division might be more convenient, why they would be
unable to achieve anything less than a just and expedient result
from the Bankruptcy Division. Indeed, the only apparent
difference between the two forums is that they are presided over
by different judges. This alone, however, does not warrant the
exercise of this Court's jurisdiction.

Lastly, the Plaintiffs' prosecution of this case before
this Court bears some of the hallmarks of "forum-shopping."

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 21

Aside from their uniform belief that the Bankruptcy Division lacks jurisdiction over fraudulent-conveyance actions, there is no apparent commonality between the underlying adversary proceedings. Indeed, not all involve exclusively fraudulent-conveyance issues; some also involve claims of preferential transfers. There is no suggestion that the Plaintiffs were at any point denied an opportunity to challenge the Bankruptcy Division's constitutional authority to decide fraudulent-conveyance actions. The Plaintiffs have supplied no explanation for why declaratory relief was sought in May of 2012, when these cases had been pending for several years and the *Stern* decision was nearly a year old. They have offered no explanation for why an appeal of an adverse determination by the Bankruptcy Division would be an inadequate means of resolving this issue. The Court struggles to conceive of any reason why the Plaintiffs chose to raise this issue in this fashion, other than out of a desire to present their claims to a different judge.

The Court thus finds that there is an adequate, alternative forum in which the plaintiffs can raise the issues they raise in this action. The Court further finds that none of the five factors counsel in favor of exercising jurisdiction over this matter. Accordingly, this action is appropriately dismissed.

S_____

*Benta v. Springel*
Civil No. 2012-36
Memorandum Opinion
Page 22

**Curtis V. Gómez**
**Chief Judge**